# REPORTS

OF

# CASES ARGUED AND DETERMINED

AT JANUARY TERM, 1852.

---

## DRINKARD *vs.* THE STATE.

1. When an indictment is withdrawn from the docket, "on motion of the solicitor, the leave of the court being first had, with permission to reinstate it if necessary," and no other step is taken in the case for more than two years afterwards, the cause is discontinued.

ERROR to the Circuit Court of Chambers.
Tried before the Hon. E. Pickens.

RICE, for plaintiff in error.

1. A prosecution by indictment is a suit in which the State is plaintiff, and the accused is the defendant. If such suit was not commenced before the indictment was found, the finding of the indictment and its return into the court by the grand jury is the commencement of the suit, whether a capias issues or not; or whether the capias issued is returned executed or not executed.

The *mere neglect* of the clerk to docket it cannot operate a discontinuance of such suit. Nor can the mere neglect or mere passiveness of any officer produce such a result. But where the solicitor, by leave of the court, actually interferes with its pendency on the docket, and its progress, and takes it off the docket, withdraws it, and files it, and keeps it off

2

the docket for more than a term, such *active and unlawful interference* amounts in law to a discontinuance or abandonment of the prosecution.  Clay's Dig. 460, § 2.

2. The rights of a defendant in a civil case cannot be greater than those of a defendant in a criminal case.  Nor can the State, in a prosecution by indictment, claim *an exemption* from the consequences of its own unlawful interference with the progress of the suit, in any case where a plaintiff in a civil suit could not claim like exemption.  The State, in this respect, possesses no exclusive privileges; and wherever the interference of a plaintiff in a civil suit would be construed as working a discontinuance or abandonment of his suit, the like interference by the State, by leave of the court, with its own prosecution, will be deemed a discontinuance or abandonment of the prosecution.  Suppose a plaintiff in a civil suit had actually done with his suit what the solicitor by leave of court did with this indictment, would it not have been a clear case of discontinuance or abandonment of the suit?  6 Comyn's Dig. marginal page 266 (W. 1); Clay's Dig. 342, § 162, which shows that those causes only "*remaining on the docket* of any court *at the rising thereof,* shall be continued over *for trial at the next succeeding term.*"  Of course, those causes which are *taken off the docket* are discontinued.— Kennon v. Bell, Minor's Rep. 98; State v. Blackwell, 9 Ala. Rep. 79.

Ashlock v. Commonwealth, 7 B. Monroe, 44, may be correct in Kentucky, where they have no such statutes as ours bearing on the subject; but it is insisted that it is not the law here.  It will not do to admit the power in a solicitor by leave of court to withdraw a case from the docket "*with leave to reinstate it if necessary.*"  If this power exists in one criminal case, it exists in all; and indictments for the highest offences may be kept in this state of "suspended animation" for many years, until the witnesses for the defence have all died, and then reinstated, greatly to the subversion of justice, and the oppression of the innocent.  The statute of limitations in such cases ceases to be a statute of repose.

Discontinuance is good ground for reversal.  Givens v. Robbins & Pointer, 5 Ala. Rep. 676.

It could not have been pleaded to the indictment, nor was it necessary to plead it; it comes up on the record.

The entry of a *nolle prosequi* is "*a discharge as to the indictment.*" This was the *decision* of all the judges, except the chief justice (Holt) who *intimated* a different opinion, in Goddard v. Smith, 1 Salkeld, 21; Commonwealth v. Wheeler, 2 Mass. Rep. 172; State v. Blackwell, 9 Ala. Rep. 79.

The effect of a *nolle prosequi* or discontinuance in a criminal case cannot be cured by any thing occurring afterwards, because it is "*a discharge of the indictment,*" and there is no statute of jeofails as to proceedings in criminal cases.

The case cited from 7 B. Monroe shows that a *nolle prosequi* entered, with *express leave of court to reinstate*, may not be attended with such an effect; but the leave of *court* to reinstate cannot alter the effect, unless the *defendant agrees* at the time of the *nolle prosequi*, that the indictment may be reinstated, and therefore the case in 7 B. Monroe is, to this extent, not the law of Alabama.

The whole policy of our State and the nature of our institutions demonstrate, that it never was the design of the legislative tribunals to invest or arm a solicitor or a court with the power to file an indictment, and keep it off the docket at their mere pleasure, and to reinstate and try it when it suited their whim or caprice. "A *speedy* public trial" is expressly guaranteed by the tenth section of our bill of rights, and this right is inconsistent with this *filing* right claimed for the State. If the State can file and then reinstate, at pleasure, when or how can *the defendant* get the case back on the docket, if the court and solicitor do not wish it back, or are not ready to put it back?

M. A. BALDWIN, Attorney General, for the State.

1. By the common law, the Attorney General alone had the power to discharge an indictment, without acquittal, and this was by *nolle prosequi;* and in that even he might issue *other process upon the same indictment.* Com. v. Wheeler, 2 Mass. 174; The State v. Fleming, 7 Humph. 152; The State v. McNeil, 3 Hawks, 183; Goddard v. Smith, 6 Mod. Rep. [261]; 4 Com. Dig. Indictment (K), 698; 1 Chitty Cr. Law, 480; 1 Salk. 21; The State v. Thomson, 3 Hawks, 613.

2. But admit that a *nolle prosequi* once entered bars any other *proceeding on the same indictment.* No prosecuting attorney has the right to enter a *nolle prosequi*, or otherwise discontinue an indictment, except by leave of the court. Clay's Dig. 460, § 2. Before a *nolle prosequi* or a discontinuance can be pleaded by a defendant, must not the record show that a *nolle prosequi*, or "a declaration that the State will proceed no further," and that by the consent of the court, was entered? Without this, the indictment is not discontinued, and the indictment stood continued by operation of law. The clerk should have placed it upon the docket, as "*leave to withdraw and file*," by consent of court, was not leave to enter a *nolle prosequi*. The failure of clerk to place the indictment upon the docket did not amount to a discontinuance. Wiswall v. Gliddon, 4 Ala. Rep. 358.

3. "Leave to file" was "leave to place away among the papers of the office, and contained a reservation to reinstate. Brow v. The State, 7 Humph. 156; Ashlock v. The State, 7 B. Monroe, 44.

4. The motion to strike the case from the docket was properly overruled. The defence did not pursue the proper mode to accomplish their object. It should *have been pleaded in bar to the indictment.*

A paper found among the files of the court proves itself. State v. Clarkson, 3 Ala. Rep. 378. By not pleading the facts specially it was waived, as the plea of not guilty admitted the indictment to be genuine.—Judge Co. Court of Pike Co. v. Wilson, 18 Ala. Rep. 758-9.

DARGAN, C. J.—The plaintiff in error was indicted at the Spring Term, 1847, of the Circuit Court of Chambers, for gaming. Two writs of capias were issued against him, both of which were returned, "not found." At the Spring Term, 1848, the following entry was made upon the record: "Upon motion of the solicitor, leave of the court being first had, this case is withdrawn from the docket, with leave to reinstate if necessary." No further step was taken to bring the defendant into court until January, 1851, when, upon the order of the solicitor, a capias was issued, and the defendant arrested. At the trial the defendant moved the court to

strike the cause from the docket, on the ground that it had been discontinued; but his motion was overruled, and he excepted. The overruling of this motion is now assigned as error.

All the authorities agree that every suit, whether civil or criminal, may be discontinued. Hawkins' Pleas of the Crown, Vol. 2, 416; Chitty's Criminal Law, 364; and a discontinuance may be defined to be a gap or *chasm* in the proceeding, occurring after the suit is pending. Chitty's Criminal Law, Vol. 1, 364; Hawkins' Pleas of the Crown, Vol. 2, 416; Black. Vol. 3, 296. If we test this case by these rules, it appears to me it is impossible to say there has not been a discontinuance of the suit, for it was pending from the time the indictment was returned into court by the grand jury, and there has been a chasm in the process of more than two years, and this chasm was produced by the joint act of the solicitor and the court, or rather by the act of the solicitor with the approbation of the court. If this be not a discontinuance, then I say that there is no such thing as a discontinuance known to our law. I would not hold that the mere failure to issue process would be a discontinuance; because the issuing of process upon an indictment is made the duty of the clerk by our law, and he being a mere ministerial officer, the defendant ought not to be allowed to take advantage of his omissions to perform his duty; but when the cause is taken from the docket by the solicitor, with the permission of the court, and no process is issued thereon for more than two years, it must be discontinued, if by law a criminal case can be discontinued by failing to prosecute it regularly.

It is, however, insisted by the attorney general that the practice of taking indictments off the docket, and declining to issue process on them for a time, has been sanctioned by the Circuit Courts, for a considerable time, and has been found beneficial in the administration of the criminal law. This may be true, but I can find no warrant for such a practice in the common law, and I am certain in my own mind that our statute law gives none. The second section of the eleventh chapter of the Penal Code provides that it shall not be lawful for the attorney general, solicitor, or other prosecuting officer to enter a *nolle prosequi* on any indictment, or in any other way

to discontinue or abandon the same, without the leave of the court having jurisdiction to try the offence being first had and entered on its minutes. Clay's Dig. 460–461. But I can draw no other inference from this act than this; the attorney general or solicitor, who before its passage had the exclusive control of all prosecutions, and could enter a *nolle prosequi* or discontinue a prosecution, as he saw fit, must, since the passage of the act, obtain the consent of the court before he can do either. But when the one or the other is done with the consent of the court, that is, when there has been a *nolle prosequi* entered, or the prosecution discontinued, the same consequences follow which would have resulted from a discontinuance or a *nolle prosequi* before the passage of the act.

It is also urged that this practice has obtained in Kentucky, and we are referred to the case of the Commonwealth v. Ashlock, 7 B. Monroe, 44. I admit that this case fully sustains the practice pursued by the Circuit Court in this case; but on what authority, or in accordance with what rule, the courts of Kentucky proceed, I know not. If it be in pursuance of a statute of their own, then their decision is correct; but if they profess to proceed according to the practice of the common law of England, then their decision is incorrect; for the common law gives no countenance to such a practice. Indeed, the Court of Appeals of Kentucky admit that the case would have been discontinued *if leave had not been obtained* to commence again at the time permission was granted to suspend further proceedings; but I am at a loss to know how leave to commence the prosecution afresh, by issuing new process, can prevent the actual chasm in the prosecution, resulting from the omission to prosecute, unless it be declared by the legislative will that such a chasm shall not produce a discontinuance. I therefore infer that the courts of Kentucky are governed by statute law, or if they are not, then I must say that their decision is erroneous, and I cannot follow it. That it would be well for the legislature to adopt such a practice by enactment, I have no doubt; but the court, which is guided by rules as well in practice as in determining upon the guilt or innocence of the accused, cannot. We must be governed by the rules of law, as they exist. We have not the power to introduce new laws, on the ground that they are

more convenient than the old, or that they would better subserve the purposes of justice.

The ruling of the Circuit Court was erroneous, and the judgment must be reversed.