## Ex parte HALL.

[INDICTMENT FOR MURDER—DISCONTINUANCE]

1. *Criminal prosecution; how may be discontinued.*—A criminal prosecution, as well as a civil suit, may be discontinued by the act of the State, or of the court, or of the attorney who prosecutes in behalf of the State.

2. *Discontinuance; definition of.*—A discontinuance is defined to be, *a gap or chasm* in the proceeding, occurring while the suit is pending.

3. *Same; what amounts to waiver of.*—If, notwithstanding the discontinuance, the defendant continues to appear, and suffers the suit to progress without objection on his part, the discontinuance is waived, and he loses the benefit of it.

4. The petitioner was indicted for murder in the circuit court of Cherokee county, in 1865.  In 1867, on his application, the venue was changed to the county of Baine.  Afterwards, in December, 1867, the county of Baine was abolished by an ordinance of the constitutional convention.  In 1868 said ordinance was repealed by an act of the general assembly, by which it was provided "that said county shall be known as the county of Etowah."  The cause was then entered upon the State docket of Etowah, and the petitioner continued to appear, without objection, and the cause was continued from term to term until the fall term of the circuit court of Etowah county, 1871 ; at which term petitioner moved the court to strike said cause from the docket, on the ground that the same had been discontinued.  His motion was overruled, and he excepted, and now makes an application to this court for a *mandamus* to compel the circuit court to strike said cause from the docket,—*Held*, 1st, that the said ordinance, abolishing the county of Baine, was a discontinuance of said prosecution ; 2d, that the said

act of the general assembly, repealing said ordinance, did not create a new county, but re-established the county of Baine, with another name; 3d, that the continued appearance of said petitioner, without objection, and the continuance of said cause from term to term, until the fall term of the circuit court of Etowah county, 1871, was, on his part, a waiver of said discontinuance. (PETERS, J., *dissenting*, held that the abolition of the county of Baine did not work a discontinuance of the prosecution.)

THIS was a petition of William M. Hall for a rule *nisi* to be directed to the presiding judge of the circuit court of Etowah, commanding said court to strike from the docket the case of the State of Alabama v. William M. Hall, on an indictment for murder, on the ground that the case had been discontinued. The facts material to an understanding of the case will be found in the opinion of the court.

COOPER & REEVES, for the petition.—Under the laws of England, whence our system of jurisprudence is derived, since the time of Edward I, the king was recognized as the fountain of justice and supreme magistrate of the kingdom, intrusted with the whole execution of the law. No court whatsoever can claim any jurisdiction, unless it some way or other derive it from him.—2 Bacon's Abr. 618.

In time of Edward I, that it might seem that justice flowed from the king, the king himself sat in person in the court of king's bench. Hence the power of this court, which it still retains, of exercising a superintendence over other jurisdictions. But the king was sometimes present, yet the chief-justice gave the rule, that the king might not decide his own cause.—*Ib.*

At common law, all courts derived their authority from the king. For more convenient administration of justice, the king appointed, by letters patent to be revoked at his pleasure, the judges of the several courts, to administer the law according to the power committed to and distributed among said several courts. The king himself being intrusted with the whole executive power of the law, sits not in judgment in any court.—2 Bacon's Abr. 619, "B."

Hence, it has been determined that at common law the patents of judges, sheriffs, &c., are determined by the death

of the king in whose name they are made.—Bacon's Abr. p. 622, (C).

Hence, by parity of reasoning, the county of Baine having been created—composed of detached portions taken from other counties—into a separate jurisdiction, having elected its officers, organized its courts, under and by virtue of the act of 1866–7, was recognized as one of the counties of Alabama, having a lawful jurisdiction co-extensive with the boundaries prescribed in the act by which it was created. One year afterwards that act was repealed. By that repeal the separate jurisdiction was taken away, and re-attached or reverted to the counties whence taken; and by operation of law the several county offices became vacant and the officers became *functus officio.*

By the 3d article of the declaration of rights, all political power is inherent in the people, and all free governments are formed on their authority and established for their benefit; and that, therefore, they have at all times an inherent right to change their form of government in such manner as they may deem expedient.—Const. Ala. art. 1.

The people in their convention had the right to reorganize their judicial system, and to create or abolish counties. The county of *Baine* being abolished, no inherent jurisdiction remained, and no authority, direct, or inherent, or constructive, remained with the officers of *Baine county.* The clerk could issue no process, the sheriff had no authority; no one was authorized by law to give transcripts of or to certify records. The courts once existing were wiped out, and no creative power existed to impart vitality to actions pending.

It was an act of the State in the exercise of her sovereign power; and in all criminal prosecutions the legislature, as well as the people in convention, may grant pardons for offenses against the State either before or after prosecution; and in all cases where the due administration of the laws are interrupted by voluntary intervention of the State, or by any of its constituted agents having the authority to control that prosecution, it operates as a discontinuance,

and is equivalent in its consequences to a release of the defendant.

Baine county was *de facto et de jure* vested with the necessary functions for the administration of law and order. The powers and functions with which Baine was invested were not inherent, but derivative; integral parts of an inherent sovereignty in the State delegated for the convenience of administrative justice, resumable at the pleasure of the delegating, power. Baine county was but the creature of the State, invested with administrative, but no inherent sovereignty. Her jurisdiction and territory were coterminous; her boundaries confined her jurisdiction. Her boundaries and jurisdiction depend upon the legislative will. The legislature creates and may destroy. The object of dividing a State into counties is the convenience in the administration of the laws. When Baine county was created, all the incidents of a county attached to it; when it was abolished, all the incidents which conspired to constitute the functions of a county fell *eo instanti* the county was abolished, unless the repealing act should otherwise provide.

There were no provisions giving direction as to the disposition of unadjudicated business, further than to provide the jurisdiction over the territory of which it was composed should re-attach to the counties whence taken.

A county is the creature of an act of the legislature; the repeal of the act by the convention abolished the county.

A prosecution by indictment is a suit in which the State is plaintiff and the accused is the defendant.—*Drinkard v. State*, 20 Ala. 9, 594; see brief of counsel in above case.

. The rights of a defendant in a civil cause can not be greater than those of a defendant in a criminal case.—See opinion of the court in case of *Drinkard v. State*, 20 Ala. Rep. 10.

It is well established by all the authorities that every suit, whether civil or criminal, may be discontinued.—*Ib.* 13.

The question then arises, what will produce a discontinuance?

In answer to this question, we think that the authorities

fully sustain the position that any active and unlawful in-terference amounts in law to a discontinuance.—*Drinkard v. State*, 20 Ala. 9; *Forrester v. Forrester*, 39 Ala. 320; see opinion of the court, 323; *Ex parte Rivers*, 40 Ala. 712; see opinion of court, 714.

The State being the party plaintiff, did take such an ac-tive and unlawful interference, (by its convention of 1867,) in abolishing the county of Baine, as to produce a discon-tinuance in this cause.

There was no waiver; there can be none in a capital fel-ony by implication. No act of the State has been predi-cated upon the delay in making the motion.—40 Ala. p. 1; *Cancenci v. People*, 4 Smith's N. Y. 128.

JOHN FOSTER, *contra.*—The ordinance of the convention of 1867, abolishing the county of Baine, is void, because that convention possessed no legislative power.—Jemison on Conventions, p. 391.

If the ordinance was valid, it had no vitality until the constitution was adopted by the people of Alabama and ratified by congress. This was the opinion of the military authorities who then controlled the State. They, by their orders, still recognized the county of Baine.—See Orders of Gens. Pope and Swayne.

There was no failure to hold a court which could operate as a discontinuance of this cause.

If the ordinance was valid, it is only as the exercise of legislative power, and no act of a legislature can discon-tinue a cause pending in court. The county of Baine was established, if not by continuing the Code in force, cer-tainly by the act of the legislature of December, 1868. Changing the name and boundaries is immaterial. If by virtue of the ordinance the jurisdiction of the case was transferred to Cherokee, then the re-establishing of the county re-transferred the cause to Etowah.

Each term of the courts of Baine were held after the or-dinance, by at least a *de facto* judge.

Plainly the petitioner has waived the discontinuance, if there was one. His motion to strike the cause from the

docket, was based on facts which he knew several terms before his motion was made.—See *Ex parte Rhodes*, 43 Ala. Rep. 373.

PECK, C. J.—A criminal, as well as a civil suit, may be discontinued. A discontinuance is defined to be *a gap or chasm* in the proceeding after the suit is pending.—Hawk. Pleas of the Crown, vol. 2, 416; Chitty's Crim. Law, 346; *Drinkard v. The State*, 20 Ala. 9. In that case, the defendant below was indicted for gaming. Two writs of *capias* were issued against him, which were returned "not found." Thereupon, on motion of the solicitor, with the leave of the court, the case was withdrawn from the docket, with leave to reinstate the case, if necessary. No further step was taken in the cause for several terms, when, upon order of the solicitor, a *capias* was issued and the defendant was arrested. At the trial, the defendant moved the court to strike the cause from the docket, on the ground that it had been discontinued. The motion was overruled, and the defendant excepted. This court held that the cause was discontinued.

In the case of *Ex parte Rivers*, (40 Ala. 712,) the petitioner was indicted in the circuit court of Barbour county, for an assault with intent to murder. After the cause had been continued several times, upon the ground that the presiding judge had been of counsel; and on that ground, on motion of the prosecuting attorney, the court ordered the cause to be transferred to the circuit court of Macon county. A transcript of the proceedings, as in change of venue, together with the papers of the cause, were forwarded to the clerk of the circuit court of Macon county. The defendant objected to the ruling of the court, transferring the cause from Barbour to Macon county. His objection was overruled, and he excepted. After said order was made, the cause disappeared from the docket of the circuit court of Barbour county for several terms of said court; when the solicitor moved the court of said county to vacate the order transferring said cause to Macon county. To this defendant objected; his objection was overruled,

and he excepted. The court vacated said order of transfer, and directed said cause to be continued until the next term of said court. To all this defendant objected; his objection was overruled, and he excepted.

At the next term of said court, the defendant moved the court to strike said cause from the docket, for the reason that the prosecution had been discontinued. The court overruled his motion, and he excepted, and on defendant's application the cause was continued. Thereupon, defendant made an application to this court for a rule on the judge of said circuit court to require him to show cause why a *mandamus* should not issue, commanding him to strike said cause from the docket. This court held that the cause was discontinued, and the defendant's application was granted.

In this case, the petitioner, at the fall term of the circuit court of Cherokee county, 1865, was indicted for the crime of murder. At the fall term of said court, 1867, on petitioner's application, the venue was changed to the circuit court of Baine county. Afterwards, on the 12th day of October of the same year, a transcript of the proceedings, with the papers in the case, was forwarded to the clerk of the circuit court of Baine county, and the cause was entered upon the State docket of said county. Afterwards, at the fall term of the circuit court of Baine county, 1867, the petitioner states in his petition, he was put upon his trial on said indictment, and after the trial had progressed for some time, the court, for reasons satisfactory to the presiding judge, continued the case to the next term of said court. After this, on the 3d day of November, 1867, the constitutional convention of this State passed an ordinance, entitled "An ordinance to abolish the new county, called the county of Baine, formed by the last general assembly of this State." Said ordinance is as follows :

"*Be it ordained by the people of the State of Alabama in convention assembled*, That the new county, called the county of Baine, formed out of portions of the counties of Cherokee, DeKalb, Marshall, Blount, St. Clair and Cal-

44

houn, in this State, by an act of the general assembly of this State, purporting to have been approved on the seventh day of December, 1866, and numbered 92 among the published acts of said general assembly, be, and the same is hereby abolished, and the territory and jurisdiction of said new county of Baine is restored to the counties out of which it was formed, as the same existed before the formation of said new county."

Afterwards, on the 1st day of December, 1868, by an act of the general assembly, said ordinance was repealed, and in said act it is provided and declared that said county of Baine shall be known as the county of Etowah. By said act the territory of said county is somewhat, but not materially changed. Notwithstanding the said ordinance abolishing the said county of Baine, circuit courts appear to have been held in said county up to the passage of said act of the 1st of December, 1868, the last court being held in the fall of said year, 1868. The transcript of the proceedings had in said cause is made a part of petitioner's petition, which contains the following entry, to-wit: "Baine County—Fall Term, 1868. State v. Wm. M. Hall. Came the State by her solicitor, J. L. Cunningham, and the defendant in person, and the court having been of counsel, this cause stands continued." The next entry in said transcript is as follows : "Spring Term, 1869—Etowah County. State v. Wm. M. Hall. The court having been of counsel, cause stands continued by operation of law." Similar entries appear in said transcript up to the spring term, 1871.

At the fall term, 1871, the court was held by the Hon. Wm. S. Mudd, one of the judges of the circuit court of this State. At this term of the said court, the said transcript states, petitioner, said Wm. M. Hall, came in his own person, and by counsel, and moved the court to strike said cause from the docket, and that he be discharged.

Several grounds are stated in the motion why the same should be granted, all, however, amounting to this, that said ordinance abolishing said county of Baine was a discontinuance of said prosecution. The transcript states

that said motion was heard upon the statutes, said ordinance, and military orders, in reference to said counties of Baine and Etowah, and upon proof that the judicial and other officers of said county of Baine had, in fact, continued to perform their duties and functions up to the repeal of the said ordinance of the convention of 1867, by which the county of Baine was abolished.

What said military orders referred to were, is not stated, and we do not judicially know what they were. The said motion was overruled, and petitioner excepted. The cause was then continued by consent, without prejudice, &c.

On the authority of the cases of *Drinkard v. The State*, and *Ex parte Rivers, supra*, it seems to us, the said ordinance abolishing said county of Baine, was a discontinuance of said prosecution. From the abolition of said county until the same was re-established, with the name of Etowah, a period of nearly twelve months elapsed, during which period the proceedings in said cause were interrupted, and no step could legally be taken in the same. This was a gap or chasm in the proceedings occasioned by the plaintiff, the State, and was a discontinuance. But the continued appearance of the petitioner, and the continuance of said cause, as stated, without objection on his part, was a waiver of said discontinuance. It is said in Blackstone's Commentaries, vol. 3, p. 296, that "where the plaintiff leaves a chasm in the proceedings of his cause as by not continuing the process regularly from day to day, and from time to time, as he ought to do, the suit is discontinued, and the defendant is no longer bound to attend, but the plaintiff must begin again." The clear inference from this is, if the defendant does attend, and permits the cause to proceed without objection, the error or irregularity is waived, and he thereby loses the benefit of it. In practice, it is required of every one to take advantage of his rights at the proper time, and neglecting to do so, will be considered a waiver.—Bouv. Law Dic. vol. 2, p. 648. This rule of practice we think as applicable to a criminal as in a civil proceeding.

If it be said the petitioner was a prisoner, and appear-
ance was not a matter of option or choice with him, it is a
sufficient answer to say, the transcript shows he was a pris-
oner enlarged on bail, and was as free to have made his
motion to strike the cause from the docket eighteen months
or two years before as at the time it was made.

It is argued by petitioner's counsel that Etowah county
is not the county in which the indictment was found, nor
the county to which the venue was changed; that the
venue was changed to Baine county, and that Etowah is,
essentially, another and different county; that the aboli-
tion of Baine county was a discontinuance of the prosecu-
tion; that the cause was improperly, and without author-
ity of law, transferred to the docket of the circuit court of
Etowah county, and, therefore, his motion to strike the
same from the docket of Etowah county should have been
sustained.

This argument may be apparently plausible, but it is ap-
parently only.   The act to repeal the ordinance abolishing
the county of Baine did not create a new county, but, in
reality, merely re-established the county of Baine, with
another name.   The county of Etowah embraces, substan-
tially, the same territory embraced in the county of Baine,
and the courts were to be held at the same place.   The
petitioner having neglected to make his motion in proper
time, and permitted the cause to proceed from term to
term, for some three years, the discontinuance must be
held to be waived.   For these reasons, no error was com-
mitted in overruling the petitioner's motion to strike the
said cause from the docket; consequently, the application
for a *mandamus* must be denied.   The petitioner will pay
the costs of said application.

PETERS, J., *(dissenting.)*—I assent to the judgment of
the court pronounced by the Chief-Justice in this case, re-
fusing the rule *nisi;* but I do not feel content with all the
conclusions which seem to grow out of the argument in its
support.   I am not prepared to admit that the mere abo-
lition of a county by the legislative power of the State is,

in fact, or in effect, a *discontinuance* of all the causes depending in the courts of the county thus abolished. The rule of discontinuance is the same in civil and in criminal cases. In a civil cause there must be some voluntary act of the plaintiff, which discontinues the suit, before this can be done.—1 Tidd's Prac. 679 ; 2 Archb. Prac. 234 ; 20 Ala. 9 ; 26 Ala. 52, 72 ; 24 Ala. 354 ; 43 Ala. 255, 268 ; 44 Ala. 324, 273. In a civil suit it can not be said that the abolition of the county in which the suit is pending is a voluntary act of the plaintiff in such suit. It may be done very much against the wish and the objection of the plaintiff. It is, then, no discontinuance, if we are to be governed by the technical definition of discontinuance. I think that this distinction is important, and should not be lost sight of.

I also think the safer and sounder opinion is, that the State, as the sovereign, may suspend the courts in which suits may be pending without at all affecting the rights of the suitors therein. And such courts may be revived, or others may be created in their stead, and the causes depending therein may be transferred to such new courts, without prejudice to the rights of the litigants in such courts, and this transfer may be made at such time and in such manner as the sovereign power may choose to declare. The sovereign power has no limit but its discretion, when there is no constitutional restraint.

[NOTE BY REPORTER.—After the delivery of the foregoing opinion, petitioner applied for a rehearing. Only two sheets (and those the last) of the application came into the Reporter's hands ; he is therefore unable to give a synopsis of the argument in support of the petition. The following response was made by

PECK, C. J.—I have re-examined the opinion in this case, in connection with the petition for a rehearing. I see no reason to be dissatisfied with the opinion, and think it correct. The application for a rehearing is, therefore, denied, with costs.