The People of the State of Illinois, Appellant, v. Frank Pastel, Appellee.

Gen. No. 8,169.

Opinion filed January 25, 1928.

RICHARD CLYDE CHAPPELL, State's Attorney, for appellant.

SUMNER & REARDON, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

On October 20, 1921, one Frank P. Pastel was arrested upon a warrant issued upon a complaint charging him with burglary and larceny and was taken before A. Thatcher, a justice of the peace. The transcript of the justice shows this docket entry: "Defendant Frank Pastel arrested October 20th. Cash bond for $1,000 given for his appearance March 20th, 1922, before the grand jury." When said Frank Pastel was taken before the justice by the sheriff he was accompanied by his brother, Charles Pastel. The amount of bail was fixed at $1,000. Charles Pastel offered to sign the bail bond as surety, but he, being a nonresident of the State, was not accepted. Thereupon Charles Pastel offered to deposit two United States Treasury certificates, each of the value of $500, with the justice as a cash bond. There is evidence tending to show that he was informed that the justice could not accept a cash bond and that thereupon he agreed to leave the two certificates with the justice and

the justice agreed to try and get a surety on the bond for Frank Pastel, and that the certificates would be retained as security for any surety who might sign the bond. This appears to have been agreed to and Frank executed a personal bail bond and was released from custody. The justice never did secure another surety for said appeal bond. At the following March, 1922, term of court, an indictment was returned against Frank charging him, with others, with the offense of burglary and larceny. A *capias* was issued on this indictment and it seems that the sheriff returned the *capias* with this indorsement thereon: ''I duly served the within by Dieter Burger, Robert Myers, Frank Pastel and Roy Morris, as I am therein commanded.'' Just what this return means is not clear. Under the return the sheriff indorsed his fees as follows: ''Service $4.00, Mileage $6.00, Return $.25—$10.25.'' The statute does not provide any particular form for a return on a criminal *capias*. Section 4, Division XII of the Criminal Code, Cahill's St. ch. 38, ¶ 749, provides as follows: ''The sheriff * * * of the county to which the *capias* is directed, shall arrest the person named in the warrant, and, if the offense is bailable and the writ is not returnable forthwith, let him to bail if sufficient bail is offered, or if the offense is not bailable or sufficient bail not offered, take his body to the jail of the county where the *capias* is returnable, and deliver him, together with the *capias*, to the keeper of the jail, there to remain until discharged in due course of law. If the process is returnable forthwith, the accused shall be immediately brought into court, when he shall either be committed, bailed or tried, as the court may direct.'' The return is very informal and the word ''by'' was probably one of the printed words in the blank return and should have been followed by the words ''taking the bodies of the said (persons named in the *capias*)'' etc. The sheriff, however, either through ignorance or carelessness, might

have intended to use the word "on" in place of "by." The essential words, however, in the return, are "I have duly served the within as I am therein commanded." The fact that the fees for service, mileage and return are indorsed on the *capias* by the sheriff indicates prima facie, at least, that the *capias* was, in fact, served by arresting the persons named therein. The court record in the criminal case, however, does not show that Frank Pastel was ever arrested or arraigned in court or released upon bail, after the indictment was found. No proceedings of any kind were had in said cause in the circuit court until the March, 1924, term, when on March 28, on motion of the State's attorney, the indictment was stricken from the docket with leave to reinstate the same. At the March, 1925, term the succeeding State's attorney had the cause reinstated and on March 23, 1925, had the defendant, Frank Pastel, called and defaulted and a judgment of forfeiture on his recognizance entered and a *scire facias* was ordered returnable on the first day of the next term. On September 30, 1925, proof of service of the *scire facias* having been made, said Pastel was ruled to answer instanter. He was called and defaulted and judgment rendered against him on his personal recognizance for the sume of $1,000 and costs. In the meantime said justice of the peace, on instructions of the then State's attorney, had cashed the treasury certificates and had received therefor the sum of $1,165 which money he deposited in the State Bank of Jerseyville. On the fourth day of January, 1926, an execution was issued on the judgment rendered in the *scire facias* proceeding against said Frank Pastel, which was returned on the same day, "no property found" and on the same day the present State's attorney made an affidavit for a garnishee summons against A. Thatcher, the justice of the peace, and filed certain interrogatories to be answered by the garnishee. To the second interrogatory the garnishee answered that he had in

his possession the sum of $1,165 of the effects of Frank Pastel and to the third interrogatory answered that he had in his possession said sum above mentioned, $1,000 of which was deposited as a so-called cash bond for the appearance of the above-mentioned Frank Pastel in the circuit court on a certain date to answer unto a charge there preferred against him. On March 15, 1926, the court entered judgment in the garnishment proceedings in favor of Frank Pastel for the use of the People of the State of Illinois, against said Thatcher, for the sum of $1,027.12. On the eighth day of May, 1926, being a day of the same March term, Charles C. Pastel asked leave to file an intervening petition in said garnishment proceedings, which leave was granted. This intervening petition sets out the fact that said Charles C. Pastel was the owner of the treasury certificates and the other facts as substantially hereinabove noted, and prays that said money for which the certificates were sold, to wit, $1,165 be paid to him. To this petition a demurrer was filed by the State's attorney, which was overruled. Thereupon the State's attorney filed his answer to the petiton and the cause was heard by the court. The evidence showed that after the judgment and garnishment were rendered the sum of $1,027.12 was paid by the justice to the present State's attorney. The court, having heard all the evidence upon the hearing upon the intervening petition and the answer thereto, rendered a judgment granting the prayer of the intervening petition and ordered the present State's attorney to pay to Charles C. Pastel, the intervening petitioner, said sum of $1,027.12, to reverse which judgment this appeal is prosecuted.

At the time the treasury certificates were deposited with the justice of the peace and the said Frank Pastel gave his personal recognizance for bail, cash bail or security was not authorized by the laws of this State, but it is insisted that the evidence shows that

these certificates were not deposited as cash bail, but were simply left with the justice as a security to whoever might sign a recognizance as surety for said Frank Pastel. We cannot agree with this conclusion. A fair interpretation of all the testimony shows that it was, in fact, taken as a cash bail, and while these securities were not, in fact, money, they were obligations of the government which could, at any time, be converted into money and occupied the same position as cash bail. We think a fair interpretation of all the evidence shows that they were so treated by the justice of the peace and the then acting State's attorney. The transcript of the justice states that they were deposited as cash bail. The said Frank Pastel was released from custody by reason of the deposit of them and to all intents and purposes they must be treated in the same light as if they were money and were received in lieu of the recognizance required by law with a surety thereon.

The appellant relies upon the cases of *County of Rock Island v. County of Mercer*, 24 Ill. 35, and *Smart v. Cason*, 50 Ill. 195, to sustain his contention that while the law did not authorize the taking of cash bail, yet on a judgment of forfeiture of a recognizance, the parties giving and taking the cash bail being in *pari delicto*, and the county having possession of the money, the one depositing the cash bail cannot recover it back. In the above case of the *County of Rock Island v. County of Mercer*, the sheriff took $1,500 as a cash bail in lieu of a recognizance with surety. The court there said: "We think the Circuit Court properly treated the money in controversy as if it had been recovered upon a recognizance taken for the appearance of the prisoner, by whom it was deposited with the sheriff, and the only important question in the case is, to which county the money thus collected belongs." In the case of *Smart v. Cason, supra*, the defendant on an indictment for larceny gave to a deputy sheriff the sum of

$800 in lieu of a bail bond and the parties executed a written agreement, in substance, that the defendant had deposited with the sheriff said sum of money for the use of the People and if default should be made it was to be forfeited to the People, and the defendant thereupon gained his liberty. A few days after this transaction the defendant tendered to the sheriff a recognizance signed by himself and three other persons, as sureties thereto and demanded back his money. The sheriff declined to receive the bond and return the money, whereupon he sued the sheriff to recover the same. The court, after stating that the sheriff had no authority to receive the money in lieu of the bond, required by law, and release the defendant, and that the defendant had no lawful right to deposit said money with the sheriff, the acts of both parties being unlawful and contrary to public policy, they were in *pari delicto* and the money should be treated the same as if it had been collected on a forfeiture recognizance. Such, undoubtedly, was the law of this State when the certificates above mentioned were deposited with the justice of the peace and if there was a lawful forfeiture of the recognizance in this case, the county of Jersey is undoubtedly entitled to the money in question.

We think that a fair interpretation of the return of the sheriff indorsed upon the *capias* is that after the indictment was found the defendant, Frank Pastel, was apprehended by the sheriff and taken into custody by virtue thereof. If this was true then there could have been no forfeiture of the recognizance taken by the justice as it was satisfied fully by the arrest under the *capias*. But we believe there is another reason equally as potent why there was no valid forfeiture in this case. The indictment was stricken from the docket on March 28, 1924, and remained off the docket until March 17, 1925, when it was reinstated. Six days thereafter, on March 23, 1925, without notice to the defendant, Frank Pastel, was called and defaulted for

nonappearance and an order of forfeiture of his recognizance entered. Cases involving the effect of striking an indictment from the docket upon the bail are few, but the decisions of the courts which have passed upon this question are apparently unanimous and supported by sound reason.

In the case of *Drinkard v. State,* 20 Ala. 9, after an indictment was found, the following order was entered: "Upon motion of the solicitor, leave of the court being first had, this case is withdrawn from the docket with leave to reinstate if necessary." Nothing further was done toward the prosecution of the defendant for over two years, when the defendant was arrested and tried. At the trial the defendant moved the court to strike the case from the docket on the ground that it had been discontinued. This motion was overruled, and on appeal to the Supreme Court of that State it was held that the order withdrawing the case from the docket operated as a discontinuance thereof.

In the case of *Smith v. State,* 149 Ala. 53, it was held: "It is true that a criminal case, as well as a civil suit, may be discontinued by the act of the prosecuting officer for the state, and a discontinuance is defined as 'a gap or chasm in the proceeding, after the suit is pending.' But, in order to constitute such chasm, it is not sufficient that some ministerial officer has omitted to do something which it was his duty to perform, but it must be the act of a prosecuting officer, indicating his intention to abandon the prosecution of the case."

In *Ashlock v. Commonwealth,* 7 B. Mon. (Ky.) 44, the order in regard to the indictment was: "On motion of the commonwealth's attorney, it is ordered that this case be struck off the docket, with leave to reinstate it hereafter by motion." The case was subsequently reinstated upon the docket and the court, in rendering its opinion held: "An order striking a suit from the docket, made on motion of the plaintiff, and without reservation or qualification, we should be in-

clined to regard as a voluntary dismissal or discontinuance, and as placing the case, after the term when the order was made, beyond the power of the court. But here the right to reinstate the case upon the docket being expressly reserved, the order, we think, should not be construed as a dismissal or discontinuance, but as a mere removal or omission of the case upon the docket. * * * The order is, however, in our opinion, unusual, and we should not be understood as approving such a rule of practice, perceiving no necessity, nor sufficient reason for it, and it may have the effect to delude and entrap litigants.''

In *Commonwealth v. Bottoms,* 105 Ky. 222, the order entered by the court was as follows: ''This day came the attorney for the commonwealth, and Joe Bottoms, the defendant in the eight following prosecutions, * * *; and upon the faith of the promise of said Bottoms to forever cease and abstain from selling such liquors in this county, directly or indirectly, in person or through another, these indictments are now filed away, with leave to reinstate without notice, and to carry said prosecutions to final trial and judgment, which is to be done in the event that said Bottoms should at any time violate said promise.'' It appears that thereafter the said defendant was again indicted, tried and convicted of selling spirituous liquors and the above cases were redocketed and the defendant brought to trial, whereupon he made a motion to strike the case from the docket on the ground that the above order was a *nolle prosequi* and a discontinuance of the cases against him. It was said by the court: ''We know of no law that authorizes the order to file away an indictment with leave to redocket, but such has been the practice for years in this state, where the defendants in prosecutions are not before the court, and repeated efforts on the part of the officers have failed to bring them before the court. When the defendant is before the court, and the case stands for trial, we are

not aware of any law or rule of practice that would authorize the attorney for the commonwealth, on his own motion, to file the indictment away, on conditions, and hold the prosecution *in terrorem* over the defendant; and we do not approve of such practice. However, such was done in this case, and with the consent of appellee, and upon terms; * * * the legal effect of such an order was simply a continuance indefinitely, and an *exoneration of any bail for appearance,* unless the contrary should appear in the order." The facts in the case of *Jones v. Commonwealth,* 114 Ky. 599, show that the defendant resisted the motion to strike the case from the docket and demanded trial, which was refused and the case stricken. The action of the court under these circumstances was held to be a dismissal and discontinuance of the case. In the case of *Miller v. Commonwealth,* 192 Ky. 709, it appears that one Hogan was indicted in 1916 for the crime of murder and was admitted to bail in the sum of $1,000, there being three sureties upon his bond. Thereafter no action of any kind was taken in said case for over two years, or until the August term, 1918, when the case was called to trial and the defendants being in court in person and by attorney, the attorney for the Commonwealth announced it was not ready for trial and on his motion it was ordered that the defendants and witnesses be discharged without day until they are again summoned and that 30 days' notice shall be given to the defendants of the day set for trial. On August 12, 1919, the case was again continued until the next December term of court, with a like provision of a 30 days' notice to the defendants. Notice was served upon the attorneys of the defendant of the day set for trial at said December term, but no notice was served upon the defendant Hogan. He failed to appear at the December term, forfeiture of his bond was ordered and the sureties summoned to show cause why judgment should not be rendered against them. The

sureties defended their liability on the ground that the facts, as above noted, had the effect to discontinue the prosecution and to discharge the defendant from their friendly custody as sureties, and to permit him to go where and when he chose and that he was now residing in Indiana and they were thereby released from liability upon the covenants of the bond. In passing upon this the court held that sureties upon bail bonds are excused from fulfilling the requirements of the bond if they are prevented by the act of the law, or by the act of the obligee, the State, through its constituted authorities, and holds, as in the *Bottoms* case, that where a cause is stricken from the docket with leave to reinstate, the bail is exonerated.

In the opinion, the case of *Hall v. Commonwealth,* 17 Ky. L. Rep. 231, is quoted as follows: "If it be true that the indictment in queston was filed away as claimed by appellant, then there was no prosecution pending in court at the June term; hence no order forfeiting the bond could be legally made, nor could any judgment be legally rendered upon said bond, and such judgment would be clearly erroneous, if not absolutely void. If, however, the judgment is not void, the filing away of the indictment would have the effect *to release the surety in the bail bond*; and that fact, if pleaded and proven by appellant, would have been a good defense."

The court in its own opinion in the *Miller* case, *supra,* holds very forcibly: "Hence to file away an indictment with leave to reinstate it does not have the effect to *nolle prosequi* the indictment nor to dismiss it, but the effect is to continue it indefinitely, and possibly for all time, and if the defendant is upon bail, the sureties *are discharged* from liability upon the bond, * * *."

In the case at bar the indictment was stricken from the docket on motion of the State's attorney, with leave to reinstate. For a year or more no effort was made to prosecute said Pastel under the indictment. When

the present State's attorney assumed office, on his motion, the indictment was reinstated, the defendant called and defaulted for not appearing, and an order entered declaring a forfeiture of his bond. Pastel had no knowledge that the indictment had been reinstated or that any further attempt would be made to prosecute him thereunder. In this case there were no sureties upon the bond; only a judgment was rendered against the principal of the bond, but that fact cannot avoid the application of the principle of the law. The law is presumed to be based upon reason and justice and to hold that a State's attorney in criminal prosecutions, where a defendant has given bail either before a justice on the preliminary hearing or before the court on a *capias* after an indictment, can cause the case to be stricken from the docket with leave to reinstate, thus luring the defendant into the belief that either the prosecution thereof had been abandoned or, at least, that there was no immediate intention to proceed with it, and then, at a remote period, without notice to the defendant, cause the indictment to be reinstated, the defendant called and defaulted, and a forfeiture declared upon the recognizance, would do the utmost violence to both reason and justice and be opposed to every principle of right. It is not necessary for us to hold and we do not hold that an order striking an indictment from the docket, with leave to reinstate, operates as a discontinuance or dismissal of the case, as we can conceive, under some circumstances, where such an action might be proper, as in a case where the defendant has never been apprehended, but the question before us pertains only to the validity of the judgment of forfeiture of the recognizance, and as to that we hold that the judgment, under the facts shown by the record in this case, was void for the reasons stated.

The judgment of the circuit court is affirmed.

*Affirmed.*